Frank M. Weyer, Esq. (State Bar No. 127011)
**TECHCOASTLAW®**
2032 Whitley Ave.
Los Angeles CA 90068
Telephone: (310) 494-6616
Facsimile: (310) 494-9089
fweyer@techcoastlaw.com

Attorney for Plaintiff
EveryMD.com LLC

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| EVERYMD.COM LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK INC., a Delaware Corporation,<br><br>Defendant. | Civil Action No. 2:16-cv-06473 AB (JEMx)<br><br>**PLAINTIFF EVERYMD.COM LLC'S OPPOSITION TO DEFENDANT FACEBOOK INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date: February 6, 2017<br>Time: 10:00 AM<br>Ctrm: 7B<br><br>Judge: Hon. André Birotte Jr. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................iv

I.   INTRODUCTION ...................................................................................1

II.  LEGAL STANDARDS ...........................................................................6

   A.   The Presumption of Patent Validity ................................................6

   B.   Burden of Proof for Facebook's Motion on the Pleadings .................7

   C.   Claim Construction is Required Prior to Determining Subject  Matter
   Eligibility ...........................................................................................7

III. ARGUMENT ...........................................................................................8

   A.   The '192 and '631 Patents Claim Different Concrete Solutions to Problems in
   Internet Communications that Existed in November 1999, the Priority Date for both
   the '192 and '631 Patents. ...............................................................8

   B.   The '192 and '631 Patent Claims, as Properly Interpreted, Are Directed to
   Concrete and Specific Methods that Create Machines and Systems that Provide
   Previously Unavailable Communications with Online and Offline Recipients. ........9

   C.   The '192 Patent Claims are Directed at a Concrete and Specific Method for
   Turning User Computers into Communications Devices that Allow Previously
   Unavailable Communications with Online and Offline Recipients.............................9

   D.   The '631 Patent Claims are Directed at a Second Concrete and Specific
   Method, Different from the Method of the '192 Patent, for Turning Recipient
   Devices into Communications Devices that Allow Previously Unavailable
   Communications with Online and Offline Recipients. .............................................12

   E.   The '192 and '631 Patent Claims Constitute Patentable Subject Matter under
   the Methodology Set Forth in Alice and in the PTO's Alice-Compliant Patent
   Examination Procedures..........................................................................................13

   F.   Facebook Improperly Attempts to "Recast" the Claims of the '192 and '631
   Patents in the Same Manner it "Recast" the Parties Rule 26 Meeting of Counsel into
   the Meet and Confer Required by Local Rule 7-3. ..................................................14

   G.   Facebook Improperly Recasts and Re-Writes the Claims as Only Parts of the
   Whole. .....................................................................................................................15

H.   Facebooks Remaining Arguments are Improper and Irrelevant. .......................17

1.   Facebook's Discussion Regarding the Alleged Lack of Inventive Features in the '192 and '631 Patent Claims is Irrelevant and Unsupported ...................................17

2.   Facebook's Assertion that the Claims of the '192 Patent and those of the '122 Patent Are Substantially Identical Is Exactly Opposite to What Was Found by the Patent Office and Confirmed by the Federal Circuit ................................................18

**IV.   CONCLUSION .................................................................................................19**

# TABLE OF AUTHORITIES

**Page**

**CASES**

Alice Corp. v. CLS Bank International, 134 S. Ct. 2347 (2014)................1-7,13-17,19

Phillips v. AWH Corp.,

415 F.3d 1303 (Fed. Cir. 2005)....................................................................... 4

CG Technology Development, LLC v. BWIN.Party (USA), Inc.,

2016 WL 6089696 (DNV 2016)...........----------................................................ 5,6

Hal Roach Studios, Inc. v. Richard Feiner & Co.,

896 F.2d 1542 (9th Cir. 1989)....................................................................... 7

General Conference Corp. of Seventh Day Adventists

 v. Seventh-Day Adventist Congregational Church,

887 F.2d 228 (9th Cir. 1989)....................................................................... 7

Markman v. Westview Instruments, 116 S. Ct. 1384 (1996)............................... 7

Warner-Jenkinson Co. Inc. v. Hilton Davis Chemical Co.,

117 S. Ct. 1040 (1997)............................................................................ 16

**STATUTES AND LAWS**

35 U.S.C. §101................................................................... 1,2-7,13,19

35 U.S.C. §102................................................................... 4

35 U.S.C. §103................................................................... 4,18

35 U.S.C. §282(a)................................................................. 6

Local Rule 7-3.................................................................... 14,15

Fed. R. Civ. P. 12(c).............................................................. 7

Fed. R. Civ. P. 26(f)............................................................. 14,15

# I.    INTRODUCTION

This action is a straightforward action for patent infringement.  The plaintiff is EveryMD.com LLC ("EveryMD"), a California limited liability company formed and owned by Troy K. Javaher and Frank M. Weyer, the inventors of the two patents in suit ("the EveryMD Inventors").  The patents at issue are U.S. Patent No. 9,137,192 which issued September 15, 2015 ("the '192 patent"), and U.S. Patent No. 8,504,631 which issued on August 6, 2013.  The patents cover inventions made by the EveryMD Inventors in developing their website at www.everymd.com, which has been in continuous operation since 2001.  As shown in the detailed claim charts attached to EveryMD's Amended Complaint (Dkt. Nos. 13, 13-3, 13-5), defendant Facebook, Inc ("Facebook") infringes claims 1-3, 8-9, 12 and 16 of the '192 patent and claims 1, 3, 5, 7, 8 and 9 of the '631 patent.  EveryMD is represented by one of the EveryMD Inventors, Frank Weyer, who in addition to having a Master's Degree in engineering from Caltech and having begun a PhD program in engineering at MIT has a law degree from the University of California at Berkeley.  Facebook is represented by Heidi Keefe, Mark Weinstein, and Lam Nguyen of Cooley, LLP.

Facebook, Inc has filed a motion for judgment on the pleadings that the '192 and '631 patents are not directed to patent eligible subject matter pursuant to 35 U.S.C. §101 under the Supreme Court's decision in Alice Corp. v. CLS Bank International, 134 S. Ct. 2347 (2014) and subsequent Federal Circuit opinions ("Facebook's Motion").  In Alice the Supreme Court modified the test to be used by the U.S. Patent and Trademark Office ("PTO") in determining whether an invention sought to be patented constitutes patent eligible subject matter under 35 U.S.C §101 ("§101").  The Supreme Court in Alice set forth what has now become known as a "two-step" test "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." Alice, 134 S. Ct.at 2355.  The "two-step" test of Alice is preceded by

interpretation of the claims at issue.  Once a claim has been properly interpreted to determine what the specific elements and bounds are of the invention being claimed, under the first step set forth in <u>Alice</u>, the court first must determine whether the claim is directed to a patent ineligible concept, such as an abstract idea. <u>Id.</u> If the court determines that a properly interpreted claim <u>is not</u> directed at merely an abstract idea, the analysis ends, and the patent claim is patent eligible.  A claim that is patent eligible under §101 may still be invalid as being anticipated or obvious in view of prior art, or for lacking other patent requirements, but it is not invalid under §101.

Step two of <u>Alice</u> comes into play only if it is determined at step one that a claim as properly interpreted is in fact directed to merely an abstract idea.  In that case the claim may still be patent eligible if the claim, despite being directed to an abstract idea, nonetheless contains "an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." <u>Id.</u> (internal quotations, citation and brackets omitted).  The determination of whether a claim contains an inventive concept must be done from the view of one of ordinary skill in the art as of the priority date of the patent in question.

As a result of the change in law brought about by <u>Alice</u>, some of patents issued by the PTO prior to <u>Alice</u> have been found to not meet the new test and have been found to be invalid.  Many of those patents were found invalid because they simply implemented using a computer existing methods or practices that had been previously performed manually by individual.  Such existing methods or practices that could be performed manually by individuals were found under <u>Alice</u> to be unpatentable "abstract ideas."

After the Supreme Court issued the <u>Alice</u> decision, the PTO implemented new patent examination rules to ensure that all patents issued after implementation of those rules met the new standard for patentable subject matter.  The PTO issued its first new

set of <u>Alice</u>-compliant guidelines on December 16, 2014 (Ex. 1[1]).  The guidelines include a flow chart for determining subject matter eligibility under <u>Alice</u>, shown below: (Ex. 1, p. 05)



**SUBJECT MATTER ELIGIBILITY TEST FOR PRODUCTS AND PROCESSES**

*PRIOR TO EVALUATING A CLAIM FOR PATENTABILITY, ESTABLISH THE BROADEST REASONABLE INTERPRETATION OF THE CLAIM. ANALYZE THE CLAIM AS A WHOLE WHEN EVALUATING FOR PATENTABILITY.*

(Step 1)
IS THE CLAIM TO A PROCESS, MACHINE, MANUFACTURE OR COMPOSITION OF MATTER? — NO

YES

(Step 2A)
[PART 1 Mayo test]
IS THE CLAIM DIRECTED TO A LAW OF NATURE, A NATURAL PHENOMENON, OR AN ABSTRACT IDEA (JUDICIALLY RECOGNIZED EXCEPTIONS)? — NO

YES

(Step 2B)
[PART 2 Mayo test]
DOES THE CLAIM RECITE ADDITIONAL ELEMENTS THAT AMOUNT TO **SIGNIFICANTLY MORE** THAN THE JUDICIAL EXCEPTION? — YES / NO

CLAIM **QUALIFIES** AS ELIGIBLE SUBJECT MATTER UNDER 35 USC 101

CLAIM IS **NOT** ELIGIBLE SUBJECT MATTER UNDER 35 USC 101

---

[1] Exhibits 1-3 are attached to EveryMD's Request for Judicial Notice filed herewith.  Exhibits A-I are attached to Facebook's Request for Judicial Notice (Dkt. No. 25).

As shown in the flow chart, the first step in evaluating a patent claim to determine patentability under Alice is to interpret the claim.  In the case of initial patent prosecution before the PTO, the claim is interpreted by the patent examiner under the "broadest reasonable interpretation."  In the case of a Court proceeding, the claim is interpreted under the so-called "Phillips" standard instead of the broadest reasonable interpretation standard used by the PTO. See, e.g. Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005).

Once the claim is interpreted under the applicable standard, the claim as a whole must be analyzed to determine patentability.  As shown in the flow chart, the first step in the analysis is to determine whether the patent claims a process, machine, manufacture or composition of matter.  If the claim does so, the next step is to determine whether the claim is directed to a law of nature, a natural phenomenon, or an abstract idea.  If the claim is not directed at a law of nature, a natural phenomenon, or an abstract idea, the claim is patent eligible under §101, and the Alice analysis ends.  The patent claim may still be invalid under other statutory sections (e.g. as anticipated or obvious in light of prior art under 35 U.S.C. §§102 or 103), but at least under §101 the claim is patent eligible.

Since the Alice decision, it has become common practice for defendants sued for infringement of a computer related patent to assert that the patent is invalid for claiming an "abstract idea."  Some of those assertions are true, others are not.  Often, defendants do not, as required, first ask the court to interpret the claim and then analyze the properly interpreted claim to determine whether the claim as a whole is directed only at an abstract idea.  Instead, defendants often simply conjure up a simplified and improper generalization of only part of the claim an then argue that that simplified generalization (as opposed to the properly interpreted claim as a whole) is nothing more than an abstract idea and therefore patent ineligible.

In the first months following the <u>Alice</u> decision, there was a lot of uncertainty in the District Courts about what it means for a patent to claim an "abstact idea" and therefore to not be patent eligible.  Over time, however, Courts have become more experienced and knowledgeable about how to determine whether a patent claims an "abstract idea" and have begun denying many <u>Alice</u> motions.

A recent (Oct. 2016) decision by the Nevada District Court provides a good discussion of how defendants attempt to recast patent claims as nothing more than "abstract ideas" and how Courts are no longer being fooled by such simplified recasting of claims.  In <u>CG Technology Development, LLC v. BWIN.Party (USA), Inc.</u>, 2016 WL 6089696*5 (DNV 2016), the Court rejected the defendant's contention that the claims were directed merely to an abstract idea, and explained its analysis under <u>Alice</u> as follows:

> *Alice Corp.* stands for the proposition that a method directed to an unpatentable abstract concept does not become patentable simply because the practitioner is directed to use a generic computer to perform it or because the invention is claimed as a generic computer apparatus used to perform the unpatentable method. But it is <u>unpatentable</u> methods that are impugned under *Alice Corp.* Methods utilizing a generic computer apparatus are not per se infirm under *Alice Corp.;* it is just that the bare addition of a generic computer will not make an otherwise unpatentable method patentable.
>
> Here, Claim 19 requires the location of a mobile gaming device via the computer system. That is concrete enough to take the claim outside the scope of Alice Corp.'s "abstract idea" exception to patentability under § 101. The location of the mobile gaming device via computer is a limited, concrete, physical task.  Claim 19 does not monopolize purely abstract concepts or all of their applications. Even if the act of locating a remote object could be considered an abstract idea—and it probably can't be—Claim 19 does not cover all of its applications, but only the limited application of determining the location of a mobile gaming device using a computer. The computer system in Claim 19 is not applied purely in its capacity as a generic computing device, i.e., as a substitute for a human mind, but at least in part as a communication tool. The fact that the computer system is also used to perform functions that are abstract

(determining game outcomes and accounting for winnings) does not render the claim unpatentable. The integration of the non-abstract function of determining the mobile gaming device location via computer with the other processes for which the computer is used renders the invention as a whole patentable even if certain elements might not be separately patentable. The Court therefore denies the motion to dismiss Claim 19 of the '058 Patent under § 101.

CG Technology Development, LLC v. BWIN.Party (USA), Inc., 2016 WL 6089696*5 (DNV 2016).

As shown below, the claims of the '192 and '631 patents, like those in CG Technology, are not directed merely at an abstract idea.  Accordingly, they constitute patent eligible subject matter under §101, and Facebook's motion on the pleadings should be dismissed.

## II.    LEGAL STANDARDS

### A.    The Presumption of Patent Validity

Issued patents have a statutory presumption of validity under 35 U.S.C. §282(a), which states:

> A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

35 U.S.C. §232(a).  While it is unclear whether the presumption of validity of 35 U.S.C. §232(a) applies to patents granted before Alice (because Alice changed the law as to subject matter eligibility), it certainly applies to patents, like the '192 patent, that were granted after Alice, and after the PTO implemented its Alice-compliant guidelines.  Further, as set forth in 35 U.S.C. §282(a), even if an independent claim is found to be invalid, each dependent claim has a separate presumption of validity and must be separately examined for patentability.

**B.     Burden of Proof for Facebook's Motion on the Pleadings**

For a motion on the pleadings, the allegations in the applicable complaint (e.g. EveryMD's Amended Complaint, Dkt. No. 13) are taken to be true and all inferences are drawn in favor of EveryMD.  Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Such a motion, like a motion to dismiss for failure to state a claim, addresses the sufficiency of a pleading. Judgment on the pleadings may be granted when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that the moving party is entitled to judgment as a matter of law. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989). In testing the sufficiency of a pleading, the well-plead allegations of the nonmoving party are accepted as true, while any allegations of the moving party which have been denied are assumed to be false. Id. at 1550.  The court must view the facts presented in the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor, General Conference Corp. of Seventh Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).

**C.     Claim Construction is Required Prior to Determining Subject Matter Eligibility**

Because a threshold step before using the two-step method of Alice for determining whether a patent claim contains eligible subject matter is to properly interpret the claim, determining subject matter eligibility under §101 and Alice is possible by a motion for judgment on the pleadings only where the interpretation of the claim is undisputed or can otherwise be determined by the court without referring to extrinsic evidence and without the need for a Markman[2] patent interpretation

---

[2] "Markman hearing" is the term used to refer to a separate hearing held by a District Court to interpret claim terms.  See Markman v. Westview Instruments, 116 S. Ct. 1384 (1996).

hearing.  Here, as discussed below, Facebook's motion is based on what EveryMD believes to be an improper interpretation of the claims by Facebook that is clearly incorrect and in any case is disputed by EveryMD.  Accordingly, it does not appear that the question of whether the '192 and '631 patents claim patent eligible subject matter can be determined under a motion for judgment of the pleadings.  EveryMD notes that Facebook itself proposed adoption by the parties of the Northern District of California Patent Local Rules and that under the stipulated schedule agreed to by Facebook and adopted by the Court, the claim construction hearing in this action will not take place on July 23, 2017, and will be preceded by detailed claim construction briefings (Order Re Additional Dates, Dkt. No. 23).

## III.   ARGUMENT

**A.    The '192 and '631 Patents Claim Different Concrete Solutions to Problems in Internet Communications that Existed in November 1999, the Priority Date for both the '192 and '631 Patents.**

The '192 and '631 patents both claim priority to patent application serial number 09/447,755 that was filed November 23, 1999 ("the '755 application")(Ex H, p. 172); Ex G, p. 153) and share the same specification as the '755 application.  As is evident on their faces, the '192 and '631 patent specifications describe several different inventions made by the EveryMD Inventors in solving problems that existed with internet communications in November 1999.  As stated in the specifications, at the time the '755 specification was filed in November 1999, individuals who had internet access and who wanted to communicate with particular members of certain groups, such as particular doctors, could not do so because the doctor with whom they sought to communicate did not have an internet presence, such as an email address or website.  (See, e.g. Ex. H, col. 1, lines 35-62).  In creating a solution to this problem, the EveryMD Inventors conceived of several inventions, which they set forth in a comprehensive, multi-invention patent specification, i.e. the '755 patent specification that was filed in November 1999.  Some of those inventions were implemented by the

website www.everymd.com, which became operational in early 2001 and has operated ever since.  (Dkt. No. 13, ¶6).  To date, the EveryMD Inventors have obtained patents on four of the separate inventions described in the '755 patent specification.  (Dkt. No. 13, ¶9).  Those four separate inventions include the two different inventions claimed in the '192 and '631 patents that each provide a different solution to the problem of limited online communications that existed at the time the '755 application was filed in November 1999.

**B.    The '192 and '631 Patent Claims, as Properly Interpreted, Are Directed to Concrete and Specific Methods that Create Machines and Systems that Provide Previously Unavailable Communications with Online and Offline Recipients.**

As demonstrated in detail for each of the patents separately below, the inventions claimed in the '192 and '631 patents do not simply take an existing idea (abstract or otherwise) and implement that idea using computers.  Instead, the processes claimed in the '192 and `631 patents turn otherwise generic computing devices into new, concrete machines and systems that provide previously (i.e. prior to November 1999) non-existing communications capabilities with online and offline recipients.

**C.    The '192 Patent Claims are Directed at a Concrete and Specific Method for Turning User Computers into Communications Devices that Allow Previously Unavailable Communications with Online and Offline Recipients.**

The claims of the '192 patent claim a particular and concrete method performed by a server computer system for creating and serving web pages having a particular, concrete form that turn devices receiving those web pages (such as a user computer) into new machines that provide previously unavailable communications with online and offline recipients.  As an illustrative example, independent claim 1 of the '192 patent states:

1.  A method for providing individual online presences for a each of a plurality of members of a group of members by an interface server computer comprising the steps of:

maintaining by said interface server computer a database comprising information associated with each of said plurality of members at a database system connected to said interface server computer;

allotting by said interface server computer individual URLS to each of said plurality of members by associating an individual URL with each individual member of said plurality of members in said database system;

associating by said interface server computer an individual home page for each said individual member of said plurality of members with said individual URL allotted to said individual member in said database system, said individual home page comprising

information from said database associated with said individual member;

a first control for submitting a comment about said individual member;

and a second control separate from said first control for sending a message other than said comment to said individual member;

receiving by said interface server computer an online request for said individual URL from a requesting source;

providing said individual home page by said interface server computer to said requesting source.

(Ex. H, col. 14, lines 8-34).

An example of the web page that constitutes the user interface of the machine that is created by the claimed method of Claim 1 of the '192 patent is shown in Fig. 9 of the '192 patent, reproduced below:

1
2
3
4
5
6
7
8
9
10
11
12
13



Figure 9

14    In Fig. 9, the first and second controls claimed in claim 1 are "Post Comment"

15 control 925 and "Send E-mail" control 920, respectively.  As described in the '192

16 patent specification, after the web page of Fig. 9 is sent to a user's computer, the "Post

17 Comment" and "Send E-mail" controls are created on the user's computer screen by

18 the user's web browser.  (See, e.g. Ex. H, col. 4, lines 27-51).  As would be

19 understood by one of skill in the art in November 1999 (the effective filing date for

20 the '192 patent), the user's computer is thereby turned into a machine that can be used

21 to communicate with the individual identified on the webpage by activating either

22 control 920 (to send a private e-mail message) or control 925 (to send a public

23 comment), whether the individual is online or offline.  As set forth in the `192 patent,

24 the capability provided by the machines created on the user computers by the

25 invention claimed in claim 1 of the '192 patent did not exist prior to November 1999.

26 (See, e.g. Ex. H, col. 1, lines 35-62).  Accordingly, the claims of the '192 patent do

27 not merely implement an existing abstract idea on a computer.  Instead, they turn the

28

user computers into new machines that provide communications capabilities that did not previously exist.

**D.    The '631 Patent Claims are Directed at a Second Concrete and Specific Method, Different from the Method of the '192 Patent, for Turning Recipient Devices into Communications Devices that Allow Previously Unavailable Communications with Online and Offline Recipients.**

The claims of the '631 patent claim a second particular and concrete method performed by a server computer system different from the method claimed in the '192 patent that creates a particular and concrete communications system that provides previously unavailable communications between online and offline recipients.  As an illustrative example, independent claim 1 of the '631 patent states:

> 1. A method for providing for communications by a server computer system among a first member of a group of members for whom said server computer system has created a first server created email box and a second member of said group of members for whom said server computer system has created a second server created email box, said method comprising the steps of:
>
> said server computer system transmitting a first server created web page to a first internet access device of said second member, said first server created web page comprising a message interface for receiving by said server computer system input data comprising a first message to said first member;
>
> said server computer system receiving first input data entered into said message interface from said first internet access device of said second member;
>
> said server computer system sending a second message to a telephone number associated with said first member notifying said first member of said first input data;
>
> said server computer system sending a third message to said first server created email box of said first member, said third message comprising said first input data.

(Ex. G, col. 14, lines 14-35).

Thus, pursuant to the method claimed in independent claim 1 of the '631 patent, a server computer system creates email boxes for members of a group. When a member wants to communicate with another member, the server computer system creates a web page with a message entry interface for entering a message to the recipient member and sends that web page to an internet access device of the sending member that wants to communicate with another member. As would be understood by one of ordinary skill in the art in November 1999, the web page created by the server computer system turns the sending member's internet access device into a communications machine that allows the sending member to send an online message to the receiving member even if the receiving member is not online. That is because the server computer system forwards the message both to the online email box for the receiving member as well as to the telephone number of the receiving member. Thus the method claimed in claim 1 of the '631 creates both a particular and concrete machine and a particular and concrete communications system that together provide previously unavailable communications between an internet access device of a sending user and a telephone of a receiving user.

**E.   The '192 and '631 Patent Claims Constitute Patentable Subject Matter under the Methodology Set Forth in <u>Alice</u> and in the PTO's <u>Alice</u>-Compliant Patent Examination Procedures.**

As shown above, the claims of the '192 and '631 (1) are each directed to a process (i.e. a method) and (2) do not merely claim an abstract idea. According to the PTO's <u>Alice</u> flowchart set forth on page 3 above, the claims are therefore patent eligible according to the second diamond in the flowchart. That is, because the claims as a whole do not claim merely an abstract idea, the claims are patent eligible. The §101 analysis ends. Facebook's Motion must be denied.

//

//

**F.    Facebook Improperly Attempts to "Recast" the Claims of the '192 and '631 Patents in the Same Manner it "Recast" the Parties Rule 26 Meeting of Counsel into the Meet and Confer Required by Local Rule 7-3.**

Facebook's improper litigation practice of recasting facts and the laws to suit its needs is evident on the very first page of Facebook's Motion.  There, without blinking an eye, Facebook baldly states:

> This motion is made following the conference of counsel pursuant to Local Rule 7-3 that took place on <u>October 20, 2016</u>.

(Facebook's Motion, p. 1, lines 13-14).  No conference of counsel pursuant to Local Rule 7-3, however ever took place.

Local Rule 7-3 states:

> L.R. 7-3 Conference of Counsel Prior to Filing of Motions. In all cases not listed as exempt in L.R. 16-12, and except in connection with discovery motions (which are governed by L.R. 37-1 through 37-4) and applications for temporary restraining orders or preliminary injunctions, counsel contemplating the filing of any motion shall first contact opposing counsel to discuss <u>thoroughly</u>, preferably in person, <u>the substance of the contemplated motion and any potential resolution</u>. The conference shall take place at least seven (7) days prior to the filing of the motion. If the parties are unable to reach a resolution which eliminates the necessity for a hearing, counsel for the moving party shall include in the notice of motion a statement to the following effect:

> "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)." (L.R. 7-3)

The <u>only</u> thing that took place on <u>October 20, 2016</u> was that the parties held their FRCP 26(f) early meeting of counsel. (Dkt. No. 18, p.7, lines 7-9).  As part of that meeting, Facebook indicated that it intended to file a motion under <u>Alice</u>, but Facebook did not discuss, thoroughly or otherwise, the substance of such a motion.  In fact, as set forth in the parties' Amended Rule 26(f) Report, at the time of the meeting, Facebook <u>itself</u> did not yet know what the substance of its motion would be, i.e. whether it would file the motion as a motion for summary judgment (and thus include in its motion substance outside EveryMD's pleadings) or as a motion for judgment on

the pleadings (in which case the substance of the motion would be limited to the facts set forth in EveryMD's pleadings).  See, e.g. Dkt. 18, p. 9, lines 21-25.

The failure of Facebook to even request a conference of counsel under L.R. 7-3 is particularly egregious here because if the required L.R. 7-3 conference had in fact been held, and the substance of Facebook's motion had in fact been discussed, it would have become clear to Facebook that there was a major disagreement between the parties as to the proper interpretation of the claims.  Because the interpretation of the claims is disputed, and because the very first step prior to conducting a subject matter eligibility determination under <u>Alice</u> is properly interpreting the claims, the disputed views between the parties as to the construction of the claims would have made it clear to Facebook that its motion could not possibly be decided before completion of the claim construction procedure that Facebook itself had proposed, to which EveryMD had agreed, and which the Court has ordered adopted.  (See, Dkt. No. 23).  Under that procedure, the Court will hold its claim construction hearing on July 24, 2016.  Accordingly, any motion for subject matter eligibility of the claims of the '192 and '631 is premature before then.  Thus, if Facebook had asked for and conducted a L.R. 7-3 conference as required, it would have realized that its motion is premature and would not have wasted the Court's and the parties time and effort in bringing its motion now as a motion on the pleadings.

## G.  Facebook Improperly Recasts and Re-Writes the Claims as Only Parts of the Whole.

In the same manner that Facebook improperly attempts to recast the parties' Rule 26(f) early meeting of counsel into something that it is not (namely a L.R. 7-3 conference of counsel on its Motion), Facebook in its Motion similarly attempts to improperly recast the claims of the '192 and '631 patents into something they are not, namely rewritten, simplified, selected parts of the actual claims that ignore significant claim limitations and fail to consider the claims as a whole.  Instead of properly and objectively interpreting the claims as actually written, and then analyzing the claims

as a whole to determine whether they comply with the <u>Alice</u> subject matter eligibility requirements, Facebook improperly starts with the result it wants to achieve (i.e. that the claims merely claim an abstract idea) and then improperly recasts the actual claims into fictitious, fabricate claims that achieve the result sought by Facebook.

The most basic rule of claim interpretation is that each and every limitation of a claim must be taken into account when interpreting a claim.  See, e.g. <u>Warner-Jenkinson Co. Inc. v. Hilton Davis Chemical Co.</u>, 117 S. Ct. 1040, 1049 (1997)("Each element contained in a patent claim is deemed material to defining the scope of the patented invention.").  Facebook blatantly violates this rule by ignoring most of the actual claim limitations, selecting <u>only a part of only one</u> of those claim limitations, and then improperly recasting the claim as encompassing only that selected, partial claim limitation.  It is only by improperly interpreting and recasting the claim in this manner that Facebook is able to falsely content that the claim is directed merely at an abstract idea.

Thus, Facebook asserts that claim 1 of the '192 patent should be interpreted as claiming nothing more than "the idea of providing a home page for an individual." (Facebook's Motion, p. 13, line 27 – p. 14, line 1), when in fact, as shown on pages 9-12 above, what is actually claimed is a a particular and concrete method performed by a server computer system for creating and serving web pages having a particular, concrete form that turn devices receiving those web pages (such as a user computer) into new machines that provide previously unavailable communications with online and offline recipients.  Similarly, Facebook asserts that claim 1 of the '631 patent should be interpreted as claiming nothing more than "storing a received message and notifying its recipient that the message has been received." (Facebook's Motion, p. 10, lines 12-13), when, in fact, as discussed on pages 12-13 above, what is actually claimed is a second particular and concrete method, different from the method claimed in the '192 patent, performed by a server computer system that creates a

particular and concrete communications system that provides previously unavailable communications between online and offline recipients.

Facebook's motion is based entirely on its improper interpretations of the '192 and '631 patent claims and on its improper recasting of such claims into simplified, incomplete, fictitiously fabricated forms that Facebook then asserts claim nothing more than an abstract idea.  Because Facebook's arguments are solely based on those improperly recast and fabricated claims,  instead of claims properly interpreted as actually written, Facebook fails completely to make even a *prima facie* showing that the <u>actual</u> claims of the '192 and '631 patents as written are patent ineligible under <u>Alice</u>.  Accordingly, Facebook's Motion must be denied.

## H.   Facebooks Remaining Arguments are Improper and Irrelevant.

Facebook's Motion is strewn with numerous additional irrelevant statements and arguments in an apparent attempt to cast EveryMD and the EveryMD inventors as evil wrongdoers who are trying to take improper advantage of poor, innocent little mega-corporation Facebook.  These statements and arguments are apparently included by Facebook's attorneys in an attempt to distract the Court from the lack of merit of Facebook's Motion.  EveryMD does not wish to similarly focus on irrelevant matters, and therefore will respond briefly to only a few of Facebook's statements to shed light on Facebook's and Facebook's attorneys continuing predilection to distort the facts and the law.

### 1.   Facebook's Discussion Regarding the Alleged Lack of Inventive Features in the '192 and '631 Patent Claims is Irrelevant and Unsupported

Facebook spends a lot of space arguing that the '192 and '631 patents lack inventive features.  However, because the claims (as <u>properly</u> interpreted, not as recast by Facebook) <u>do not</u> claim merely an abstract idea, "step 2" of the procedure of <u>Alice</u> (investigating whether claims that claim merely and abstract idea nonetheless contain inventive features that make them patent eligible) is not needed.  See, e.g. the flow

chart on page 3 above, in which the bottom-most diamond that corresponds to that "step 2" is reached only if a claim is directed merely at an abstract idea).

Further, Facebook's attorney argument that the claims lack inventive concepts is unsupported by any evidence whatsoever.  Furthermore, Facebook entirely fails to take into account the time period that applies to any consideration of inventiveness. As discussed above, the priority date for both of the '192 and '631 patents is November 1999.  To consider whether the claims contain inventive features, it is necessary to go back in time and look at the claims from the point of view of one of ordinary skill in the art, and in the light of the prior art, that existed in November 1999.  35 U.S.C. §103.  Facebook completely fails to take this time requirement into account, and in fact, could not possibly do so in the context of a motion for judgment on the pleadings, because additional evidence, not existing in the pleadings, would be required.

**2. Facebook's Assertion that the Claims of the '192 Patent and those of the '122 Patent Are Substantially Identical Is Exactly Opposite to What Was Found by the Patent Office and Confirmed by the Federal Circuit**

As Facebook knows, in the reexamination it itself initiated for U.S. Patent No. 7,644,122 ("the '122 patent"), a predecessor of the '192 patent, and in the related appeals to the Patent Trial and Appeals Board ("PTAB") and the Federal Circuit, the entire focus was whether the claims should be interpreted such that all of the steps in the claims of the '122 patent were carried out by the same server computer system. (See,  Ex. C, pp. 38-41,  Ex. 2, p.2). The PTAB concluded, and the Federal Circuit affirmed, that under the broadest reasonable interpretation standard the '122 patent claims must be broadly be interpreted to not require that all the steps are performed by the same computer system.  (Ex. C, pp. 38-41,  Ex. D, p.113).  It was only that under that broad interpretation that the claims of the '122 patent were found by the PTAB and Federal Circuit to be invalid because of prior art in which the claimed method steps were performed by different, independent computer systems.  The explicit

addition of the requirement to the '192 patent claims that all of the steps be performed by the same computer system is precisely the difference between the '122 patent claims and the '192 patent claims that make the '192 patent claims novel and inventive over the prior art.  In fact, as Facebook knows, whether the PTAB was correct in interpreting the '122 patent claims as not including that requirement was the only issue addressed by the Federal Circuit.  (See Ex. 2, p. 27).  Further, the patent examiner who allowed the '192 patent was fully informed of both the PTAB's and Federal Circuit's findings prior to allowing the '192 patent claims. (Ex. 3, pp. 63, 65).

## IV.    CONCLUSION

As shown above, the claims of the '192 and '631 patents, as properly interpreted, do not claim "merely abstract ideas."  Accordingly, they are directed at patent eligible subject matter under <u>Alice</u> and 35 U.S.C. §101.  Facebook's Motion must be denied.  Alternatively, Facebook's motion should be denied as premature because the interpretation of the claims is disputed and proper construction of the claims is necessary prior to determining subject matter eligibility of the '192 and '631 patent claims.


Respectfully submitted,
**TECHCOASTLAW®**


Dated: December 13, 2016          By:  _____
Frank M. Weyer (State Bar No. 127011)
2032 Whitley Ave.
Los Angeles, CA 90068
(310) 926-3928
Fax (310) 494-9089
fweyer@techcoastlaw.com
Attorney for Plaintiff
EveryMD.com LLC