JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERYMD.COM LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>FACEBOOK INC.,<br><br>                    Defendant. | Case No.  CV 16-06473-AB (JEMx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Before the Court is Defendant Facebook Inc.'s Motion for Judgment on the Pleadings ("Motion"), filed December 2, 2016.  (Dkt. No. 24.)  Plaintiff EveryMD.com timely filed its Opposition on December 12, 2016, and Defendant timely filed its Reply on December 21, 2016.[1]  (Dkt. Nos. 27, 29.)  The Court heard oral argument on February 6, 2017, and took the matter under submission.  (Dkt. No. 30.)  For the following reasons, the Court **GRANTS** Defendant's Motion.

///

///

---

[1] Each party filed a Request for Judicial Notice, both of which were unopposed.  (Dkt. Nos. 25, 28.)  The Court **GRANTS** these requests to the extent the Court relied on the exhibits contained therein.

# I. BACKGROUND

## A. Patent Claims at Issue

Plaintiff filed this action on October 7, 2016, alleging two claims for infringement of United States Patent Number 9,137,192 ("the '192 patent"), titled "Method and Apparatus for Generating Web Pages for members" (Dkt. No. 13, First Am. Compl. ("FAC") ¶¶ 13, 20), and United States Patent Number 8,504,631 ("the '631 patent"), titled "Method Apparatus and Business System for Online Communications with Online and Offline Recipients." (*Id.* at ¶¶ 23, 27.) Plaintiff alleges Defendant directly infringes these patents "by practicing the claimed invention" of these patents without Plaintiff's authorization. (*Id.* at ¶¶ 20, 27.)

The two patents at issue share the same parent patent, No. 6,671,714, and are part of a multi-invention patent specification that enables Internet users to communicate with members of a group who have been designated web pages through which they may be contacted. Plaintiff provides as an example that this invention could serve groups of healthcare professionals by providing a searchable website through which potential patients, or "users" as described in the specification, could locate and communicate with doctors, or "recipients," even if the professional is not active on the Internet. (RJN Ex. G ("'631 Patent") at col. 1:35-2:53.) Members of the given group would each have an Internet presence—in essence, a homepage—created for them that would display their contact information and provide users a means to initiate contact or otherwise communicate with members, either by providing a ranking, leaving a comment, or sending a message to the member through the user interface. (*Id.* at col. 2:9-17 ("[T]he invention . . . set[s] up a database of contact information for members of the group, creating an internet presence for each member of such group, creating an on-line user interface allowing a user to access the member's created internet presence, and providing means of communications between the created internet presence and the member recipient.").) User messages would be sent by email, or if members did not maintain an active Internet presence, the invention provided a method by which

messages could be transmitted by facsimile or telephone.

The '631 patent, which issued on August 6, 2013, "relates to the field of online communications, and more particularly to a method, apparatus, and business system for online communications with diverse online and offline recipients." (*Id.* at col. 1:29-31.) The patent presents a total of 10 claims, with only one independent claim.[2]

Claim 1 recites:

"A method for providing for communications by a server computer system among a first member of a group of members for whom said server computer system has created a first server created email box and a second member of said group of members for whom said server computer system has created a second server created email box, said method comprising the steps of:

Said server computer system transmitting a first server created web page to a first internet access device of said second member, said first server created web page comprising a message interface for receiving by said server computer system input data comprising a first message to said first member;

Said server computer system receiving first input data entered into said message interface from said first internet access device of said second member;

Said server computer system sending a second message to a telephone number associated with said first member notifying said first member of said first input data;

Said server computer system sending a third message to said first server

---

[2] Plaintiff has not separately argued the patentability of any of the claims of either the '631 or '192 patents and has not presented "any meaningful argument for the distinctive significance of any claim limitations other than those included" in the first claim in the '631 and '192 patents. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016). The Court therefore treats each patent's first claim as representative of all the claims in the respective patents for purposes of this motion. The Court addresses other independent or dependent claims as necessary.

1          created email box of said first member, said third message

2          comprising said first input data.

3  (*Id.* at col. 14:13-35.)  Stripped of its excess verbiage, claim 1 is directed to a method

4  wherein a server-based system sends electronic messages to and from users and

5  recipients by email, or by transmitting those messages by telephone or fax if the

6  recipient does not have an Internet presence.

7          The '192 patent, which issued on September 15, 2015, "relates to the field of

8  online communications, and more particularly to a method and apparatus for generating

9  web pages for members."  (RJN Ex. H ("'192 Patent") col. 1:29-31.)  The abstract of the

10  '192 patent describes the invention simply as comprising "a method and apparatus for

11  generating web pages for members."  ('192 Patent at Abstract.)  The patent presents a

12  total of 20 claims, with two independent claims (claims 1 and 20).

13          Claim 1 recites:

14          A method for providing individual online presences for a each [sic] of a plurality

15          of members of a group of members by an interface server computer comprising

16          the steps of:

17              Maintaining by said interface server computer a database comprising

18                  information associated with each of said plurality of members at a

19                  database system connected to said interface server computer;

20              allotting by said interface server computer individual URLs to each of said

21                  plurality of members by associating an individual URL with each

22                  individual member of said plurality of members in said database

23                  system;

24              associating by said interface server computer an individual home page for

25                  each said individual member of said plurality of members with said

26                  individual URL allotted to said individual member in said database

27                  system, said individual home page comprising information from said

28                  database associated with said individual member; a first control for

4

submitting a comment about said individual member; and a second

control separate from said first control for sending a message other

than said comment to said individual member;

receiving by said interface server computer an online request for said

individual URL from a requesting source;

providing said individual home page by said interface server computer to

said requesting source.

(*Id.* at col.14:8-34.)

Claim 20 contains nearly identical elements as those in Claim 1, adding a limitation that not only allots, but also creates by the interface server computer an individual home page for each member.  (*Id.* at col. 16:1-31.)

### B. Parties' Arguments

Defendant argues in its motion that the claims in the '631 patent are not patent-eligible under 35 U.S.C. § 101 ("Section 101") because the claims are "directed to the abstract idea of storing a received message and notifying its recipient that the message has been received," which is "a longstanding practice of organizing human activity . . . ." (Mot. at 10.)  Defendant contends the '631 patent fails both steps of the test outlined in *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) ("*Alice*")—the claims are directed to an unpatentable abstract idea and contain no additional inventive elements in computer or communications technology to make them patent eligible.  (*Id.* at 10-11.)

Defendant likewise argues the claims in the '192 patent are not patent-eligible because they are "directed at a technique for providing individual home pages using well-known and generic Internet and Web technologies, and [are] not an improvement to those technologies."  (Mot. at 14.)

Plaintiff, in turn, disagrees and argues the patent claims "turn otherwise generic computing devices into new, concrete machines and systems that provide previously . . . non-existing communications capabilities with online and offline recipients."  (Opp'n at

9.)  Plaintiff argues Defendant improperly interprets the claims at issue and asserts a claim construction hearing is necessary to adjudicate this motion.  (*Id.* at 8.)

## II.  LEGAL STANDARD

### A. Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A Rule 12(c) motion follows the same standard as a motion to dismiss.  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).  A Rule 12(c) motion may thus be predicated on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal claim.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on a Rule 12(c) motion, the Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.*

### B. Test for Patent Eligibility

Section 101 "specifies four independent categories of inventions or discoveries that are eligible for patent protection: processes, machines, manufactures, and compositions of matter." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010).  "In choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope." *Id*. (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308–09 (1980)).  Even so, the Supreme Court has carved out three exceptions to Section 101's "broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" *Id.* (quoting *Chakrabarty*, 447 U.S. at 309).  These exceptions seek to protect concepts that "are part of the storehouse of knowledge of all men" and are "free to all men and reserved exclusively to none." *Id.* (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co*., 333 U.S. 127, 130 (1948)).

6

The Supreme Court has also recognized that "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 134 S. Ct. at 2354 (quoting *Mayo Collaborative Services v. Prometheus Laboratories, Inc*., 132 S. Ct. 1289, 1293 (2012) ("*Mayo*")) (ellipses in original). "Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept. Applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Id.* (citations and quotations omitted).

Expanding on its decision in *Mayo*, the Supreme Court in *Alice* established a two-step process for resolving patent eligibility under Section 101. "First, a court must 'determine whether the claims at issue are directed to one of those patent-ineligible concepts.'" *Timeplay, Inc v. Audience Entm't*, No. CV-15-05202-SJO-JCx, 2015 WL 9695321, at *3 (C.D. Cal. Nov. 10, 2015) (quoting *Alice*, 134 S. Ct. at 2355). "If so, then the court must ask '[w]hat else is there in the claims,' which requires consideration of 'the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application.'" *Id*. (quotations omitted). "In this second step, the court must 'search for an inventive concept–i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Id*. (brackets and quotations omitted).

## III.   DISCUSSION

### A. Timing of Patent Eligibility Inquiry

As a threshold matter, the Court must first determine whether it may consider the question of patent eligibility without a claim construction hearing. "Patent eligibility under [Section] 101 is a question of law that may, in appropriate cases, be decided on the pleadings without the benefit of a claim construction hearing." *Modern Telecom Sys. LLC v. Earthlink, Inc.*, No. SA-CV-14-0347-DOC, 2015 WL 1239992, at *6 (C.D. Cal. Mar. 17, 2015) (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming district court's decision to

7

1   grant motion to dismiss based on patent-ineligible subject matter under Section 101

2   without having a claim construction hearing)).  Even so, it may be "desirable—and often

3   necessary—to resolve claim construction disputes prior to a [Section] 101 analysis, for

4   the determination of patent eligibility requires a full understanding of the basic character

5   of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assurance. Co. Can.*

6   *(U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012); *but see Content Extraction*, 776 F.3d at

7   1349 ("Although the determination of patent eligibility requires a full understanding of

8   the basic character of the claimed subject matter, claim construction is not an inviolable

9   prerequisite to a validity determination under [Section] 101.").

10      Plaintiff argues this Court should delay consideration of the '192 and '631 patents

11  for patent eligibility until after the Court holds a claim construction hearing.  (Opp'n at 8

12  ("Facebook's motion is based on what EveryMD believes to be an improper

13  interpretation of the claims by Facebook that is clearly incorrect and in any case disputed

14  by EveryMD.  Accordingly, it does not appear that the question of whether the '192 and

15  '631 patents claim patent eligible subject matter can be determined under a motion for

16  judgment on the pleadings.").)   Plaintiff fails to explain, however, how the claim

17  construction process would significantly impact the Court's assessment of patent

18  eligibility in a way that the parties' arguments do not already do.  Instead, it appears that

19  the claims of the '631 and '192 patents are "sufficiently straightforward that claim

20  construction is not necessary to understand their content." *See CMG Fin. Servs., Inc. v.*

21  *Pac. Trust Bank, F.S.B.*, 50 F. Supp. 3d 1306, 1313-14 (C.D. Cal. 2014), *aff'd*, 616 F.

22  App'x 420 (Fed. Cir. 2015) (considering patent eligibility on summary judgment prior to

23  claims construction); *see also, e.g., Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-

24  09573, 2014 WL 7639820, at *6 (C.D. Cal. Oct. 28, 2014) (considering patent eligibility

25  on a motion for judgment on the pleadings prior to claims construction, observing that

26  "beyond the conclusory statement that these terms would 'have to be construed in order

27  to determine whether they cover an abstract idea,' plaintiff offers no argument as to how

28  claim construction would aid the court in applying § 101 to these non-technical terms");

1    *OIP Techs., Inc. v. Amazon.com, Inc.,* No. C-12-1233-EMC, 2012 WL 3985118, at \*5

2    (N.D. Cal. Sept. 11, 2012), *aff'd*, 788 F.3d 1359 (Fed. Cir. 2015) (concluding 12(b)(6)

3    motion under Section 101 was not premature where the plaintiff failed to explain how

4    claims construction "would materially impact the § 101 analysis in the instant case").

5    As described in the claims, the '631 and '192 patents concern the relatively non-

6    technical concepts of developing websites using servers, networks, and the Internet, and

7    enabling electronic and telephonic communications initiated from these websites.  These

8    are not so "opaque such that claim construction would be necessary to flush out [their]

9    contours" before determining whether the claims are patent eligible.[3]  *See Lumen View*

10   *Tech. v. Findthebest.com, Inc*., 984 F. Supp. 2d 189, 205 (S.D.N.Y. 2013) (finding claim

11   construction unnecessary before analyzing claims under Section 101) *quoted in CMG*

12   *Fin. Servs., Inc.*, 50 F. Supp. 3d at 1313-14; *see also* Opp'n at 9 (describing '192 patent

13   claims as presenting a method "performed by a server computer system for creating and

14   serving web pages have a particular concrete form that turn[s] devices receiving those

15   web pages (such as a computer) into new machines . . . .").  The Court ultimately finds

16   that "the basic character of the claimed subject matter is readily ascertainable from the

17   face of the patent, and that [P]laintiff's arguments for delaying the § 101 inquiry are

18   unpersuasive."  *Wolf*, 2014 WL 7639820, at \*6.

19               **B. Analysis of Patent Eligibility**

20          Having determined that Defendants' Motion is not premature, the Court now

21   addresses the Section 101 analysis for the patents at issue.

22   ///

23   ///

24

---

25   [3] Moreover, Plaintiff stipulated to additional case management deadlines by which
     Defendant would file a motion for judgment on the pleadings explicitly based on its
26   theory of patent-ineligibility under 35 U.S.C. § 101.  (*See* Dkt. No. 23.)  The same
     stipulation set the claim construction hearing four months after the hearing on the
27   motion for judgment on the pleadings.  If Plaintiff thought claim construction was
     necessary to resolve this motion, it should have brought the matter to the attention of the
28   Court, or at the very least, not stipulated to such a schedule.

1   **1.      Whether the '631 and '192 Patents are Directed to a**
2   **Patent-Ineligible Abstract Idea**

3       Turning to the first step in the *Alice/Mayo* test—whether the patent claims are

4   "directed to an abstract idea"—courts in this district have adopted the approach in

5   *Diamond v. Diehr*, 450 U.S. 175, 185 (1981) and held that the court should first

6   "identify the purpose of the claim—in other words, what the claimed invention is trying

7   to achieve—and ask whether that purpose is abstract." *Cal. Inst. of Tech. v. Hughes*

8   *Commc'ns Inc.*, 59 F. Supp. 3d 974, 991 (C.D. Cal. 2014); *accord Timeplay, Inc.*, 2015

9   WL 9695321, at *4; *Modern Telecom Sys. LLC v. Lenovo (United States) Inc.*, No. SA-

10   CV-14-1266, 2015 WL 7776873, at *6 (C.D. Cal. Dec. 2, 2015). "The *Diehr* majority

11   took the correct approach of asking what the claim was trying to achieve, instead of

12   examining the point of novelty." *Hughes*, 59 F. Supp. 3d at 991-92. Thus, "courts

13   should recite a claim's purpose at a reasonably high level of generality," using step one

14   of the *Alice/Mayo* test as "a sort of 'quick look' test, the object of which is to identify a

15   risk of preemption and ineligibility." *Id.* Then, "[i]f a claim's purpose is abstract, the

16   court looks with more care at specific claim elements at step two." *Id.*

17       Plaintiff argues the inventions claimed in the '192 and '631 patents "do not

18   simply take an existing idea (abstract or otherwise) and implement that idea using

19   computers. Instead, the processes claimed in the '192 and '631 patents turn otherwise

20   generic computing devices into new, concrete machines and systems that provide

21   previously (i.e. prior to November 1999) non-existing communications capabilities with

22   online and offline recipients." (Opp'n at 9.)  In arguing these patents are not directed to

23   an abstract idea, Plaintiff does not analyze them separately or provide any more

24   meaningful distinction between the two.

25   **a. The '631 Patent**

26       Claim 1 of the '631 patent claims a method for transmitting the email messages

27   sent by users through the website to recipients without an online presence to their fax

28   machine or their telephone, and then sending the user a reply message indicating the

1   status of the sent message.  ('631 Patent at col. 14:14-59.)  Defendant characterizes this

2   patent as "directed to the abstract idea of storing a received message and notifying its

3   recipient that the message has been received.  This idea is a longstanding practice of

4   organizing human activity, as basic as the hotel front desk clerk who receives a package

5   for a hotel guests, and then calls to inform the guests that the packages has been received

6   and is awaiting pickup."  (Mot. at 10.)

7        Claim 1 of the '631 patent is directed to generic methods of routine business

8   communications, and is therefore directed to an abstract idea.  Just as a "user" might

9   search a phonebook or directory and place a call and leave a message to inquire about

10  pricing or services offered by a particular provider, a user of the claimed invention may

11  search the database of members and send an email message to any one of them.  The

12  recipient would either receive the email in an email inbox, or if that particular recipient

13  did not have an online presence, could receive a fax or a voicemail by telephone of the

14  same message.  This process is conceptually no different than thumbing through the

15  phonebook or searching a healthcare insurance provider's directory for in-network

16  doctors, and placing a phone call and leaving a voicemail to schedule an appointment.

17  As such, the claim is directed to a "longstanding commercial practice" and "method of

18  organizing human activity" that falls "squarely within the realm of 'abstract ideas' as

19  [the Supreme Court has] used that term."  *Alice*, 134 S. Ct. at 2356-57.

20       Plaintiff argues the claimed invention is not directed to an abstract idea because

21  "the method claimed in claim 1 of the '631 creates both a particular and concrete

22  machine and a particular and concrete communications system that together provide

23  previously unavailable communications between an internet access device of a sending

24  user and a telephone of a receiving user."  (Opp'n at 17.)  Plaintiff's characterization

25  raises two points that merit discussion.

26       First, that the claim involves "particular and concrete" components is not itself

27  dispositive.  As the Federal Circuit has clarified, "a relevant inquiry at step one is 'to ask

28  whether the claims are directed to an improvement to computer functionality versus

11

1   being directed to an abstract idea.'" *In re TLI Comm'ns LLC Patent Litig.*, 823 F.3d

2   607, 611 (Fed. Cir. 2016) ("*TLI*") (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327,

3   1335 (Fed. Cir. 2016).  Claims involving the latter include those that "simply add

4   conventional computer components to well-known business practices or consist only of

5   generalized steps to be performed on a computer using conventional computer activity."

6   *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1260 (Fed. Cir. 2016)

7   (citing *TLI*, 823 F.3d at 612.)  For example, in *TLI* the Federal Circuit held patents

8   claiming a method of uploading, classifying, and storing digital images were patent-

9   ineligible even though the claims involved tangible components like "a telephone unit"

10  and a "server" because these physical components "merely provided a generic

11  environment in which to carry out the abstract idea of classifying and storing digital

12  images in an organized manner."  823 F.3d at 611.  The specification described these

13  components as "having 'the standard features of a telephone unit,' with the addition of a

14  'digital image pick up unit for recording images,' that 'operates as a digital photo camera

15  of the type which is known."  *Id.* at 612 (citations to the patent specification omitted).

16  "Likewise, the server [was] described simply in terms of performing generic computer

17  functions such as storing, receiving, and extracting data."  *Id.*  Thus, the components'

18  functions were "described in vague terms without any meaningful limitations,"

19  indicating "the focus of the patentee and of the claims was not on an improved telephone

20  unit or improved server."  *Id.* at 613.  The Federal Circuit therefore concluded the claims

21  were "not directed to a solution to a 'technological problem'" or to solving "a challenge

22  particular to the Internet," but were instead directed to an abstract idea.  *Id.*

23      The same is true of the '631 patent here.  The claim itself recites physical

24  components of a server computer system, a telephone, and fax machine, and involves

25  transmitting messages between these components.  ('631 Patent at col. 14:14-58.)  But

26  "the specification fails to provide any technical details for the tangible components," and

27  "instead predominately describes the . . . methods in purely functional terms."  *TLI*, 823

28  F.3d at 612.  For example, the claimed invention involves a "server computer system

12

transmitting . . . a web page to a[n] internet access device" which contains an interface to receive input that can then be sent as a message to a telephone number or to an email box. ('631 Patent at col. 14:21-34.)  These are standard components used in conventional ways that do not address a technological problem or solve a challenge particular to the Internet.  *TLI*, 823 F.3d at 613; *cf. Affinity Labs*, 838 F.3d at 1261 ("While the inventions in those cases involved tangible components, the components were conventional and were used in conventional ways.  The same is true in this case, as the claimed cellular telephone is used to receive wireless signals, the claimed graphical user interface is used to display a menu of options to the use, and the claimed broadcasting system is used as the source of streaming content.")

In fact, the specification clearly indicates these components are interchangeable with other existing computer and/or telephone components.  (*See* '631 Patent at col. 14:13-34.  *See also* '631 Patent at col. 13:51-54 ("The computer systems described above are for purposes of example only.  An embodiment of the invention may be implemented in any type of computer system or programming or processing environment."); col. 14:7-10 ("Further, although certain functions have been described herein as being provided by an interface server computer, those functions may be provided by one or more other devices.").)  This interchangeability indicates the claimed invention uses the components' conventional functions and does not address any particular technological problem.   As in *TLI*, the components here are "merely a conduit for the abstract idea" of enabling business communications by providing a directory of contact information to customers or clients and the means to initiate that communication.  823 F.3d at 612; *cf. Affinity Labs*, 838 F.3d at 1258 (finding a claim non-abstract that involves a "broad and familiar concept concerning information distribution that is untethered to any specific or concrete way of implementing it").  Without any meaningful limitations on the functions of these components, the claim's use of them, by itself, merely orients the abstract idea within a particular existing technological environment, which, as the Supreme Court and the Federal Circuit have

13

1  emphasized, "does not render the claim[] any less abstract."  *Affinity Labs*, 838 F.3d at

2  1259 (citing, among others, *Alice*, 134 S. Ct. at 2358; *Mayo*, 132 S. Ct. at 1294; *Bilski v.*

3  *Kappos*, 561 U.S. 593 (2010)).

4      Second, that the nature of the communications provided by this claimed invention

5  was not "previously available" is a question of novelty or nonobviousness under 35

6  U.S.C. §§ 102 and 103, not patent eligibility under § 101.  "The 'novelty' of any element

7  or steps in a process, or even of the process itself, is of no relevance in determining

8  whether the subject matter of a claim falls within the § 101 categories of possibly

9  patentable subject matter."  *Wolf*, 2014 WL 7639820, at *10 (citing *Deihr*, 450 U.S. at

10  189); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014)

11  ("[A]ny novelty in implementation of the idea is a factor to be considered only in the

12  second step of the *Alice* analysis.").  "[I]t may later be determined that the [claim] is not

13  deserving of patent protection because it fails to satisfy the statutory conditions of

14  novelty under § 102 or nonobviousness under § 103.  A rejection on either of these

15  grounds does not affect the determination that [the] claims recited subject matter which

16  was eligible for patent protection under § 101."  *Diehr*, 450 U.S. at 191.

17      The asserted claims in the '631 patent are drawn to the basic idea the exchange of

18  business communications that have long been accomplished through paper directories

19  and telephone calls.  That the '631 patent claims a method of doing so using computer

20  servers and the Internet in their ordinary capacities does not render the claims non-

21  abstract.  *See TLI*, 823 F.3d at 613.  Accordingly, the Court concludes the asserted

22  claims in the '631 patent are drawn to an abstract idea under step one of the *Alice/Mayo*

23  inquiry.

### b.  The '192 Patent

25      Plaintiff similarly characterizes the '192 patent as "a particular and concrete

26  method performed by a server computer system for creating and serving web pages

27  having a particular, concrete form that turns devices receiving those web pages (such as

28  a user computer) into new machines that provide previously unavailable

14

1   communications with online and offline recipients." (Opp'n at 9.)  Defendant, on the

2   other hand, claims the '192 patent is "directed to the idea of disseminating information

3   about an individual and allowing others to communicate with that individual," or, on a

4   more concrete level, the patent is "directed to the idea of providing a 'home page' for an

5   individual." (Mot. at 13-14.)

6        Claim one of the '192 patent claims a method for designating Internet home pages

7   for individual members of a group with individual Uniform Resource Locators

8   ("URLs") for each member's home page.  Each home page would display the contact

9   information of the individual member and an interface by which users could submit a

10  comment, ranking, or message. ('192 Patent at col. 14:8-34.)  The dependent claims

11  provide for the interfaces by which these comments, rankings, or messages are entered,

12  received, and displayed, links to member home pages, and the method for members to

13  reply to users' messages. (*Id.* at col. 14:35-15:17; 15:21-32.)  The dependent claims also

14  provide the method for transmitting an email message from a user to a telephone voice

15  message to the member or recipient. (*Id.* at col. 15:18-20.)  Independent claim 20

16  contains nearly identical elements as those in claim 1, adding a limitation that not only

17  allots, but also creates by the interface server computer an individual home page for each

18  member. (*Id.* at col. 16:1-31.)

19       The Court finds Defendant's description better characterizes the nature of the

20  asserted claims, and, as with the '631 patent, the '192 patent is directed to the abstract

21  concept of business communications soliciting information and providing feedback

22  between provider and customer.  The claimed invention provides a method for

23  individuals to inquire about a business or professional, a practice long prevalent in our

24  system, accomplished, for example, by a telephone and paper directory.  The fact that

25  the '192 patent provides a method to use varying forms of technology to communicate

26  the message is not dispositive—people have long engaged in the practice of leaving a

27  written note to relay a message that was communicated verbally or by telephone to an

28  unavailable party.  As was the case with the '631 patent, these are "method[s] of

organizing human activity" that fall "squarely within the realm of 'abstract ideas' as [the Supreme Court has] used that term." *Alice*, 134 S. Ct. at 2356-57.

And the fact that the claimed invention recites physical components does no more to save the '192 patent than it does the '631 patent. The patent does not solve a technological problem or challenge unique to the Internet. Instead, as discussed above, the specification recites standard components, including servers, a database, URLs, webpages, and interfaces, in conventional ways to accomplish standard Internet communications. The patent provides no meaningful limitations on the functions of these components; instead, they form an existing technological environment in which the abstract idea of transmitting routine business communications may be accomplished. Thus, the Court finds the '192 patent, too, is drawn to an abstract idea under step one of the *Alice/Mayo* inquiry.

## 2.      Whether the '631 and '192 Patents Recite an Inventive Concept

Having determined the '631 and '192 patents are directed to abstract ideas, in step two of the *Mayo/Alice* analysis the Court searches for an inventive concept, evaluating "whether the claims do significantly more than simply describe [the] abstract method' and thus transform the abstract idea into patentable subject matter." *Affinity Labs*, 838 F.3d at 1262 (citing *Ultramercial*, 772 F.3d at 715). The inventive concept "may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). But "[i]t is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of 'well-understood, routine, conventional activities previously known to the industry.'" *TLI*, 823 F.3d at 613 (citing *Alice*, 134 S. Ct. at 2359).

Discussing the patents together, Plaintiff insists they "do not claim merely an abstract idea" such that any discussion of inventive features is "irrelevant and

16

unsupported." (Opp'n at 17.) Plaintiff also argues that when evaluating the claims "from the point of view of one of ordinary skill in the art, and in light of the prior art, that existed in November 1999," the patents do claim inventive features. (*Id.* at 18.) Both of these arguments are unavailing. First, the Court has found both patents are directed to an abstract idea, such that the analysis in step two of the *Alice/Mayo* test is necessary. Second, as already discussed, the patent eligibility inquiry under 35 U.S.C. § 101 at issue in the present motion is distinct from the novelty and obviousness inquiries presented by 35 U.S.C. §§ 102 and 103. *See Diehr*, 450 U.S. at 190-91; *see also Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 937 (N.D. Cal. 2015), *aff'd*, No. 2015-1917, 2016 WL 6575091 (Fed. Cir. Nov. 7, 2016) ("Notably, the search for an 'inventive concept' places no importance on the novelty of the abstract ideas. A novel abstract idea is still an abstract idea, and is therefore unpatentable."). Having disposed of Plaintiff's arguments, the Court evaluates each patent in turn.

Considering the claims themselves, the Court finds neither patent includes an inventive concept that transforms the nature of the claims into patentable inventions. As Defendant argues, the technological components recited in the '631 patent are well-known, routine, and conventional. (Mot. at 11.) Specifically, claim 1 recites a "server computer system transmitting a . . . webpage to a[n] internet access device," with the webpage "comprising a message interface for receiving . . . input data," with the server computer system sending this input data to an email box or a telephone. ('631 Patent at col. 14:14-34.) The Federal Circuit has rejected the inventiveness of these components on their own. *See, e.g.*, *TLI*, 823 F.3d at 614 ("[T]he telephone unit itself is not an inventive concept sufficient to confer patent eligibility;" "the server fails to add an inventive concept because it is simply a generic computer . . . ."); *Mort. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) ("[T]he claims 'add' only generic computer components such as an 'interface,' 'network,' and 'database. These generic computer components do not satisfy the inventive concept requirement."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363,

17

1  1370 (Fed. Cir. 2015) (stating an "interactive interface" is a "generic computer

2  function").  And taken together, in the "ordered combination of the limitations," the

3  claim describes basic internet activity, in which a server transmits data through well-

4  established computer components.  *See TLI*, 823 F.3d at 612.  Even considering that

5  some of this data may be transmitted to a telephone, both the computer and the telephone

6  behave as expected, transmitting and receiving data according to known methods.  *See*

7  *id.* at 614.  Indeed, nowhere does Plaintiff claim it has altered the underlying

8  functionality of the computer, internet, or telephone components involved in the claimed

9  method.  To the contrary, the specification reveals the invention does not claim any

10  inventive technology since many of the generic computer components are

11  interchangeable.  (*See, e.g.*, '631 Patent at col. 12:14-43.)  Thus, "the recited physical

12  components behave exactly as expected according to their ordinary use," and do not

13  recite an inventive concept.  *Id.* at 615.  The '631 patent is therefore directed to patent-

14  ineligible subject matter.

15       The same is true for the '192 patent.  Allotting URLs, creating homepages with an

16  interface for posting, receiving, and displaying comments, ratings, or messages, and

17  sending voice messages to a telephone are ubiquitous tasks of conventional

18  technologies.  (*See* '192 Patent at col. 14:8-34.)  Moreover, "[n]o meaningful limitations

19  are placed on the hardware or software required to be used in the claimed methods or

20  systems. In particular, the asserted claims themselves do not contain any limitations

21  regarding specific hardware or software."  *Williamson v. Citrix Online, LLC*, No. CV-

22  11-02409-SJO-JEMx, 2016 WL 6275177, at *9 (C.D. Cal. Feb. 17, 2016), *aff'd*, No.

23  2016-1714, 2017 WL 1291313 (Fed. Cir. Apr. 7, 2017).

24       The shared specification confirms neither patent recites an inventive concept.

25  (*See, e.g.*, '192 Patent at col. 3:40-50 ("[A] user . . . uses the user's computer and an

26  internet connection to communicate with an interface server computer.  In one or more

27  embodiments, the user utilizes a web browser such as Netscape Navigator or Microsoft

28  Internet Explorer running in user computer to access a website hosted by interface server

18

. . . ."); col. 3:64-4:5 ("In one or more embodiments, contact data base comprises a plurality of data sources that can be searched by interface server for contact information. For example, contact data base may comprise one of more online directory servers, such as, for example, www.411.com or www.switchboard.com, that can be searched by interface server."); col. 4:13-20 ("Internet access device may be used when a recipient has an appropriate existing online presence.  Fax machine and telephone may be used when a recipient does not have an appropriate existing online presence."); col. 4:49-51 ("The interface may, for example, be provided in the form of a webpage that utilizes hypertext markup language (HTML)."); col. 12:18-27 ("An embodiment of the invention can be implemented as computer software in the form of computer readable code executed on one or more general purpose computers . . . or in the form of byte-code class files executable within a Java TM runtime environment running on such a computer, or in the form of bytecodes running on a processor . . . ."); col. 12:49-55 ("In one embodiment of the invention, the processor is a microprocessor manufactured by Sun Microsystems, Inc., . . . .  However, any other suitable microprocessor or microcomputer may be utilized."); col. 13:44-48 ("Application code may be embodied in any form of computer program product.  A computer program product comprises a medium configured to store or transport computer readable code, or in which computer readable code may be embedded.").)  It is well established this typical and expected use of these components does not add an inventive concept to confer patent-eligibility under § 101.  *See Alice*, 134 S. Ct. at 2358 (quoting *Mayo*, 132 S. Ct. at 1297) ("Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'"); *Ultramercial*, 772 F.3d at 716-17 (The Internet "is a ubiquitous information-transmitting medium, not a novel machine.  And adding a computer to otherwise conventional steps does not make an invention patent-eligible.  Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change

1    the analysis.").

2         Though "an inventive concept can be found in the non-conventional and non-

3    generic arrangement of known, conventional pieces," *Bascom*, 827 F.3d at 1350,

4    Plaintiff does not meaningfully argue such is the case here.  Even adopting Plaintiff's

5    preferred characterization that the patents "turn otherwise generic computing devices

6    into new, concrete machines and systems that provide previously . . . non-existing

7    communications capabilities with online and offline recipients" would not establish a

8    non-generic arrangement of known technologies.  (Opp'n at 9.)  Setting aside the generic

9    use of the computer components and the Internet, there is nothing unconventional or

10   inventive about the computer-to-telephone transmission that enables these

11   communications between online and offline users.  Indeed, Plaintiff does not claim it

12   invented the process for transmitting automated messages and data from computers to

13   telephones.  Nor do the patents specify how the transmission of these messages is to

14   occur.  *See Williamson*, 2016 WL 6275177, at *9 ("[T]he recitation of limitations . . .

15   cannot save the asserted claims, as these limitations embody the abstract concept to

16   which the claims are directed and do not specify how [it] is to be generated.").  Instead,

17   Plaintiff claims only that its website provides a way of doing so for certain recipients,

18   which happens to be a method that enables communication between online and offline

19   users.  But the practical result—which appears to be critical to Plaintiff's inventiveness

20   argument, and, here, is the suggestion that online and offline users can communicate by

21   using Plaintiff's website—does not itself alter the underlying technology in any

22   inventive way.  Once again, the claimed invention uses existing technologies and

23   components to accomplish a known means of transmitting information between

24   telephones and computers.  (*See, e.g.*, '192 Patent at col. 9:20-28 ("[T]he text of the

25   sender's e-mail message is converted to a voice message . . . using text-to-speech

26   conversion techniques that are well known in the art."); col. 9:34-10:2 ("[A] voice

27   message relating instructions to the recipient is transmitted to the recipient's telephone.

28   For example . . . the instructions may consist of a statement indicating that a voice

1    message is being delivered to the recipient and prompting the recipient to press one or

2    more buttons on the recipient's telephone.").)  At most, this is a description of a

3    computer program that relays telephonic messages.  And even when considered in

4    conjunction with the other methods claimed in both patents, no new, concrete machine

5    results from the arrangement of these conventional technologies.  Thus, the Court does

6    not find that the patents at issue present a non-conventional or non-generic arrangement

7    of known pieces such that they would be eligible for patent protection.

8         Finding no inventive concept in either the '631 or '192 patents, the Court

9    concludes they are not directed to patent-eligible subject matter.  Accordingly, the Court

10   **GRANTS** Defendant's Motion for Judgment on the Pleadings.

11   **IV.   CONCLUSION**

12        For the foregoing reasons, the Court concludes as a matter of law that the claims

13   in the '631 and '192 Patents are ineligible for patent protection and are thus invalid

14   under 35 U.S.C. § 101.  The Court **GRANTS** Defendant's Motion.

15

16        **IT IS SO ORDERED.**

17

18   Dated:  May 10, 2017      _____

19                            HONORABLE ANDRÉ BIROTTE JR.

20                            UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

21